UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FORBES IP (HK) LIMITED,<br><br>                                    Petitioner,<br><br>                  -against-<br><br>MEDIA BUSINESS GENERATORS, S.A. DE C.V.,<br><br>                                    Respondent. | 23-CV-11168 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Petitioner Forbes IP (HK) Limited ("Petitioner" or "Forbes") brings this action against Respondent Media Business Generators, S.A. de C.V. ("Respondent" or "MBG") alleging that Respondent improperly obtained an *ex parte* injunction against Forbes from a Mexico City Court in violation of an agreed upon forum selection clause. ECF No. 1. Before the Court are: (1) Petitioner's motion for injunctive relief in aid of arbitration, ECF No. 7; (2) Petitioner's motion to seal, ECF No. 2; and (3) Respondent's motion to seal, ECF No. 17. For the reasons stated herein, Petitioner's motion for injunctive relief in aid of arbitration is GRANTED, Petitioner's motion to seal is GRANTED in part and DENIED in part, and Respondent's motion to seal is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    The License Agreement

Petitioner is a Hong Kong entity, wholly owned by Forbes Global Media Holdings Inc., and handles the licensing of Forbes Media LLC's copyrights, trademarks, and other intellectual property (the "Forbes Intellectual Property") outside of the United States. ECF No. 7-5 ("Hung Decl.") ¶ 4. On October 1, 2018, Petitioner and Respondent entered into an Amended and Restated Forbes Foreign Language Edition License Agreement that provided Respondent with a

non-exclusive license to use the Forbes Intellectual Property in publishing foreign language translations of Forbes magazine in several countries. Hung Decl. ¶ 5; *see also* ECF No. 3-2 (the "Agreement"). The Agreement was amended twice, on July 3, 2019 and on September 28, 2020. *See* ECF No. 3-3; ECF No. 3-4; Hung Decl. ¶ 6. The Agreement extended through December 31, 2023, with an option to renew for a second term, provided that there was no uncured event of default, and with approval by Petitioner "not to be unreasonably withheld." Agreement, Part I §§ 2(a)–(b).

The Agreement contains a dispute resolution procedure, which requires parties to first attempt to resolve any dispute by negotiation, and failing that, to submit the dispute to the American Arbitration Association ("AAA") for mediation to take place in New York. *Id*., Part II §§ 32(a)–(b). Dispute is defined as "any disputes, controversies or claims arising out of or relating to this Agreement or the breach, except as otherwise set forth in Section 33, termination or validity thereof." *Id*., Part II § 32(a). Following the initial mediation session or 60 days from filing the written request for mediation, either party can initiate binding arbitration, to take place in New York, with respect to the matter submitted to mediation. *Id*., Part II § 32(c). Pending an arbitration, the parties are required to continue to perform their obligations under the Agreement. *Id*., Part II § 32(f).

Under the Agreement, the parties are not allowed to institute a court proceeding to resolve a Dispute relating to the Agreement, "except for a court proceeding to compel mediation and/or arbitration or otherwise enforce this Agreement to mediation and/or arbitrate or any arbitration award rendered hereunder." *Id*., Part II § 32(d). The parties additionally agreed that Petitioner retained the right to institute a court proceeding for temporary or permanent relief, including injunctive relief, for Petitioner "to prevent use of the Editorial material or the

Trademarks in any manner which is inconsistent with the terms of this Agreement." *Id*., Part II § 33(c).

The Agreement further provides that it "shall be governed by, and construed in accordance with, the laws of the State of New York, U.S.A. without regard to conflicts of law principles." *Id*., Part II § 33(a). Regarding jurisdiction, the Agreement states:

> In relation to any legal action or proceedings arising out of or in connection with this Agreement (hereinafter called "Proceedings"), [Petitioner] and [Respondent] each irrevocably submits to the jurisdiction of the New York State Supreme Court, New York County, and the United States District Court for the Southern District of New York, and waives any objection to Proceedings in any such court on the grounds of venue or forum non conveniens. This paragraph shall not affect the provisions of Section 32 as to the arbitrability of certain disputes not covered under section (c) thereof.

*Id*., Part II § 33(b).

## II. Nonrenewal of the Agreement

On July 17, 2023, Respondent submitted a formal request to renew the Agreement, including a proposed business plan. Hung Decl. ¶ 13. Respondent presented a revised proposed business plan to Petitioner on August 25, 2023. *Id*. In a September 14, 2023 letter, Petitioner stated that Respondent's proposed business plan did not align with Petitioner's goals and priorities and that Petitioner "decided to formally reject [Respondent's] business plan and not renew the above-referenced Agreement when it expires on December 31, 2023." ECF No. 21-3 at 1. Respondent thereafter submitted a request for reconsideration and a revised business plan. Hung Decl. ¶ 16.

On November 6, 2023, the director of Forbes reiterated Petitioner's position that the business plan was not sufficient. *Id*. ¶ 17. Petitioner has reiterated its non-renewal position multiple times since. *Id*. ¶ 18. On December 6, 2023, Respondent sent Petitioner a letter stating "[it] is our will to reiterate or [sic] intention to renew the License Agreement onto the Second

Term." ECF No. 21-4 at 1. The letter states that "we do not accept the reasons presented on the Notice of Non-Renewal by Forbes, and further, we have a firm position that the approval was unreasonably withheld,." *Id*. at 2. The letter further stated that if Petitioner nonetheless decided not to renew, Petitioner should "follow the procedure set forth under section 32 (a), in order to proceed with the Dispute resolution mechanism under the License Agreement." *Id*.

On December 8, 2023, Respondent petitioned the Superior Court of Justice of Mexico City for a preliminary, pre-arbitration injunction. ECF No. 21 ("Cervantes Decl.") ¶ 7. The requested injunction was granted on December 12, 2023. *Id*. ¶ 8; ECF No. 7-4 (the "Mexico Injunction"). The Mexico Injunction ordered (1) that the Agreement remain in full force and effect; (2) Petitioner to abstain from blocking implementation of the agreement that forms the basis of the action by Respondent; (3) Petitioner and Respondent to comply with the obligations in the Agreement; (4) Petitioner to abstain from implementing any agreement with third parties that had as its purpose any of the provisions in the Agreement; (5) Respondent to pay what was required under the Agreement; and (6) the AAA to be notified of the foregoing precautionary measures.[1] Mexico Injunction at 5–6, 15–16. Respondent was also required to post a bond, which it did on January 8, 2024. Cervantes Decl. ¶¶ 8–9. The Superior Court of Justice acknowledged receipt of the posted bond and accepted it on January 10, 2024, confirming the full force and effect of the Mexico Injunction. *Id*. ¶ 10; ECF No. 21-5.

On December 14, 2023, Respondent emailed Petitioner a copy of the injunction. Hung Decl. ¶ 22. Petitioner decided not to renew the Agreement on December 31, 2023. *Id*. ¶ 14. On

---

[1] The Mexico Injunction also ordered Dreams Engine, S.A. de C.V. to continue ordinary fulfillment of its contractual and commercial obligations vis-à-vis Respondent. Mexico Injunction at 5–6, 15–16. Petitioner avers that Dreams Engine, S.A. de C.V. is not a party to the Agreement and that Dreams Engine, S.A. de C.V. was included in the Mexico Injunction erroneously. ECF No. 7 at 8 n.2.

4

January 4, 2024, Petitioner reiterated that the Agreement was terminated. ECF No. 26-1 at 1. In a February 14, 2024 letter, Petitioner requested that the parties proceed directly to arbitration, as Petitioner "continues to accrue damages from MBG's wrongful use of Forbes' intellectual property despite termination of the Agreement." *Id*. at 1–2. In the same letter, Petitioner stated "as the Agreement is terminated, MBG has no rights under the alternative dispute resolution provision, as it is not included or incorporated as an express post-termination right." *Id*. at 1.

### III.    Procedural History

On December 22, 2023, Petitioner filed its Petition. ECF No. 1. On January 5, 2024, Petitioner filed the instant motion, requesting an order directing Respondent (1) to "withdraw the Mexico Injunction . . . and any other relief granted by any Mexican court purporting to enjoin Petitioner in any manner, including conducting all relevant and necessary filings before the Mexico City Court to vacate the Mexico Injunction and any related filings," and (2) to "refrain from enforcing the Mexico Injunction while it remains in effect." ECF No. 7 ("Mot.") at 1.

The Court ordered Respondent's opposition to be filed by January 19, 2024, *see* ECF No. 6, but it was not. On January 26, 2024, Petitioner filed a letter reiterating its requests and arguments as set forth in its moving papers. ECF No. 11. Respondent then filed its opposition on February 5, 2024.[2] ECF No. 18. Petitioner filed its reply on February 12, 2024. ECF No. 25.

Although evidentiary hearings may be held in relation to motions seeking preliminary injunctive relief, the Court notes that neither party has requested an evidentiary hearing and the facts relevant to Petitioner's request are not in dispute. Thus, an evidentiary hearing is unnecessary. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (internal citations omitted) ("An evidentiary hearing is not required when the relevant facts either are not

---

[2] Although untimely, the Court will consider Respondent's opposition in deciding this motion.

in dispute . . . or when the disputed facts are amenable to complete resolution on a paper record.").

## DISCUSSION

The Court first finds that Respondent had actual notice of Petitioner's motion for a preliminary injunction. The Court next analyzes Petitioner's motion for an anti-suit injunction, finding that the Court has subject matter jurisdiction, Petitioner meets the requirements for the issuance of an anti-suit injunction, and Petitioner is entitled to preliminary injunctive relief. Finally, the Court turns to the motions to seal, finding that competing considerations outweigh the presumption of access for certain of the materials that the parties seek to seal.

**I.      The "Actual Notice" Requirement for a Preliminary Injunction**

Although Respondent raises the question of improper service seemingly only to show that there is good cause for the Court to consider Respondent's late-filed opposition, the Court also addresses service to confirm that the Court has the authority to issue a preliminary injunction here. Federal Rule of Civil Procedure 65 states that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Formal service, as set forth under Rule 4, is not required. *See Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979) (explaining that Rule 65 "codifies the long settled principle that personal service of an injunction is not required so long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree"). The purpose of the notice "requirement is to give the opposing party a fair opportunity to oppose the motion for a preliminary injunction." *Weitzman v. Stein*, 897 F.2d 653, 657 (2d Cir. 1990) (internal citation and quotation marks omitted). Here, Respondent had actual notice, as made evident by the fact that Respondent filed an opposition. The motion for a preliminary injunction is properly before the Court.

**II.    Subject Matter Jurisdiction**

The district courts of the United States have original jurisdiction over an action or proceeding falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. § 203. Under Section 202 of the Convention, an arbitration agreement arising out of a legal relationship falls under the Convention, unless both parties are citizens of the United States. *Id.* § 202. Courts "may direct that arbitrations be held in accordance with the agreement," *id.* § 206, and "entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206," *Borden, Inc. v. Meiji Milk Prod. Co.*, 919 F.2d 822, 826 (2d Cir. 1990).

On December 6, 2023, prior to the expiration and termination of the Agreement, Respondent stated its belief that Petitioner unreasonably withheld its approval to renew the Agreement and noted its plan to move ahead with the dispute resolution mechanism under the Agreement if Petitioner continued with its decision not to renew the Agreement. Two days later, Respondent moved for injunctive relief before the Superior Court of Justice of Mexico City. Also in December 2023, Petitioner filed the instant petition seeking an anti-suit injunction in aid of arbitration. In a February 14, 2024 letter, Petitioner stated both that Respondent does not have any rights under the dispute resolution portion of the Agreement due to the Agreement's termination and that Petitioner intended to proceed with arbitration. Respondent contends that absent an operative arbitration agreement, the Court lacks subject matter jurisdiction under 9 U.S.C. § 203, which is the sole basis for jurisdiction asserted by Petitioner. ECF No. 26 at 1.

The parties agree that the issue of arbitrability is one to be decided by the arbitrator. *Id.* at 3 n.1; ECF No. 26-3 at 1. Thus, whether the dispute between the parties should be in arbitration is itself a question for the arbitrator. The Mexico Injunction interferes with the parties' ability to

arbitrate issues as provided for in the Agreement. Necessarily, then, Petitioner's request for an anti-suit injunction directing Respondent to withdraw the Mexico Injunction is in aid of arbitration. It is possible that the parties' dispute over the nonrenewal of the Agreement does not end up being arbitrated, but in the first instance, the parties will at least enter arbitration to determine the proper forum for that dispute. And although based on Petitioner's letter – which states that the Agreement was terminated and Respondent therefore has no rights under it – it is unclear to the Court whether Petitioner's position is tenable, that is an issue to be determined in arbitration. Accordingly, the request for an anti-suit injunction is in aid of arbitration, and the Court has subject matter jurisdiction.

### III. Anti-Suit Injunction

"[A] federal court may enjoin a party before it from pursuing litigation in a foreign forum." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)). However, principles of comity dictate that a foreign anti-suit injunction should be "used sparingly and granted only with care and great restraint." *Id*. (quoting *China Trade*, 837 F.2d at 35) (internal quotation marks omitted).

Pursuant to the *China Trade* test, a court may issue a foreign anti-suit injunction when two threshold requirements are met and the balancing of five discretionary factors weighs in favor of issuing the injunction. *See Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007). First, "an anti-suit injunction against parallel litigation may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Paramedics*, 369 F.3d at 652 (citing *China Trade*, 837 F.2d at 35). Next, courts consider:

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*China Trade*, 837 F.2d at 35. The first and third factors – whether strong public policies of the enjoining forum are threatened by the foreign action and whether the foreign action threatens the jurisdiction of the enjoining jurisdiction – are of increased importance. *Id*. at 36.

"Once the [] court has addressed the propriety of imposing an anti-suit injunction under the *China Trade* test, the [] court must then make findings on whether it is appropriate to enter a preliminary injunction . . . ." *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 98 (2d Cir. 2006). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal citation and quotation marks omitted). To obtain preliminary injunctive relief, the movant must show that: (1) the movant "is likely to succeed on the merits"; (2) the movant "is likely to suffer irreparable harm in the absence of preliminary relief; (3) "the balance of equities tips in [movant's] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A. The Threshold Requirements Are Met

The first threshold requirement is met; Petitioner and Respondent agree that the parties are the same in both matters. Mot. at 10–11; ECF No. 19 ("Opp.") at 17. Next, the Court considers whether "resolution of the case before the enjoining court is dispositive of the action to be enjoined." *See Paramedics*, 369 F.3d at 652. Petitioner here seeks an order from the Court directing Respondent to withdraw and refrain from enforcing the Mexico Injunction. ECF No. 1 ("Pet.") at 14–15. Necessarily then, a ruling here, holding that the Mexico Injunction was

obtained in violation of the Agreement will be dispositive of the Mexico Injunction. *See Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, No. 19-CV-8692 (AKH), 2019 WL 5257995, at *6 (S.D.N.Y. Oct. 17, 2019). Thus, both threshold requirements are satisfied.

### B. The Discretionary Factors Weigh in Favor of Petitioner

The *China Trade* discretionary factors favor injunctive relief by this Court. First, there is a strong public policy in enforcing forum selection clauses. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014) ("The presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own, which would likewise be undermined if another body of law were allowed to govern the enforceability of a forum selection clause."); *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 98 (S.D.N.Y. 2021) ("As a matter of both federal law and New York law, there is a strong public policy of enforcing forum-selection clauses . . . ."). The Agreement designates "the New York State Supreme Court, New York County, and the United States District Court for the Southern District of New York" as the exclusive fora for "any legal action or proceedings arising out of or in connection with this Agreement." Agreement, Part II § 33(b). Requiring Respondent to withdraw and refrain from enforcing the Mexico Injunction assists in enforcing the Agreement's forum selection clause. *See AU New Haven, LLC v. YKK Corp.*, No. 15-CV-3411 (GHW) (SN), 2018 WL 2128373, at *3 (S.D.N.Y. May 8, 2018) (finding that when the forum selection clause in the agreement specified New York as the appropriate forum, allowing the respondent to proceed with the foreign action "would undermine the parties' forum selection agreement and thereby frustrate this jurisdiction's strong public policies").

The Court next considers whether the foreign action is vexatious. "[V]exatiousness is likely to be present whenever parallel actions are proceeding concurrently." *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 126 (2d Cir.

2007) (internal citation and quotation marks omitted). Here, the parties are not litigating in the Mexico courts at the same time as an arbitration is proceeding. However, two considerations weigh in favor of vexatiousness. The Mexico Injunction is vexatious because it was filed *ex parte*. *Jolen, Inc. v. Kundan Rice Mills, Ltd.*, No. 19-CV-1296 (PKC), 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019). Additionally, allowing the Mexico Injunction to be maintained will force Petitioner to challenge it in the Mexico courts, undermining Petitioner's rights to the agreed upon forum. *China Trade* indicates that courts should restrain parties from engaging in vexatious litigation when the other factors also counsel in favor of the issuance of an injunction. *Karaha Bodas Co.*, 500 F.3d at 127.

Third, the Court considers whether the foreign court "is attempting to carve out exclusive jurisdiction over the action." *China Trade*, 837 F.2d at 36. Although the Mexican court found that it had jurisdiction to enter the Mexico Injunction, it did not suggest that such jurisdiction was exclusive. However, courts in this district have held that "where a party brings suit in a foreign forum and seeks the aid of a foreign proceeding in a blatant attempt to evade the rightful authority of the forum court, such acts may threaten the issuing court's jurisdiction." *Jolen, Inc.*, 2019 WL 1559173, at *4 (quoting *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006)) (internal quotation marks omitted). Because the Agreement provides for New York courts to have exclusive jurisdiction over any disputes raised under the Agreement, this factor weighs slightly in favor of an anti-suit injunction.

The fourth factor weighs prejudice to other equitable considerations. Petitioner argues that it is "handcuff[ed]," because the Mexico Injunction prohibits Petitioner from terminating the Agreement. Mot. at 15. Although the Mexico Injunction ensured that the Agreement remain in full force and effect, the Agreement itself also states that "[p]ending the reference to arbitration

11

and until such time as the arbitrator makes his award, the parties shall continue to perform all their obligations under this Agreement." Moreover, Petitioner has since told Respondent multiple times that Petitioner has terminated the Agreement. The Court acknowledges that the Mexico Injunction prevents Petitioner from entering into agreements with other licensees for purposes of any of the provisions in the Agreement, potentially harming Petitioner. The Court does not consider Petitioner's arguments regarding Respondent's alleged default under the Agreement or whether Respondent is complying with the terms of the Mexico Injunction, as the Court is not in a position to determine the facts underlying such alleged breaches at this juncture. On balance, this factor is neutral.

Finally, the Court looks at "whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." *AU New Haven, LLC*, 2018 WL 2128373, at *4 (internal citation omitted). Already, Petitioner has experienced inconvenience and expense by pursuing the instant matter. Petitioner will incur additional inconvenience and expense if forced to appeal the Mexico Injunction in the Mexican courts. This factor weighs in favor of an anti-suit injunction. *See Jolen, Inc.*, 2019 WL 1559173, at *5.

Overall, the discretionary *China Trade* factors weigh in favor of Petitioner.

### C. Petitioner Meets the Standard for a Preliminary Injunction

The Court next analyzes whether the factors for a preliminary injunction are met, first turning to irreparable injury. "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (internal citation and quotation marks omitted). The showing of "irreparable harm is the single most important

prerequisite for the issuance of a preliminary injunction." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal citation omitted).

Petitioner argues that irreparable harm is shown when "a party violates the forum selection clause of an agreement, thereby forcing the other party to litigate in an improper forum." Mot. at 17. The Court agrees. "[I]f litigation is permitted to proceed in a second forum, the benefit of a forum selection clause is irreparably lost." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 97 (S.D.N.Y. 2021) (internal citation omitted). "It follows that dragging [Petitioner] into litigation in a court other than the court for which they bargained constitutes irreparable harm." *Id*. at 98 (internal citations and quotation marks omitted); *see also Deutsche Mexico Holdings*, 2019 WL 5257995, at *7 ("[I]t is undeniable that dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the [] Agreement constitutes irreparable harm."). Respondent does not argue otherwise, stating only that Petitioner may challenge the Mexico Injunction during the arbitration and so Petitioner may not need to appear in the Mexican proceeding. Opp. at 20. But that does not obviate the fact that if litigation were permitted to proceed in the Mexican courts, the benefit of the forum selection clause in the Agreement would be lost.

Petitioner has also shown a likelihood of success on the merits. In evaluating this element, "the correct question is whether Petitioner[] [is] likely to succeed on [its] claim that obtaining the Mexico Injunction in the first instance ran afoul of the [Agreement] . . . ." *Deutsche*, 2019 WL 5257995, at *6. By filing for the Mexico Injunction, Respondent breached the forum selection clause of the Agreement, which unambiguously provides that "the New York State Supreme Court, New York County, and the United States District Court for the Southern District of New York" are the exclusive fora for "any legal action or proceedings arising out of or

in connection with this Agreement." *See Willis*, 550 F. Supp. 3d at 97. Respondent does not dispute this.

Finally, the Court finds that the public interest and the balance of equities favor enforcement of the forum selection clause. As noted *supra* Section III.B, there is a strong public policy of enforcing forum selection clauses. Accordingly, Petitioner is entitled to preliminary injunctive relief.

## IV.    Motions to Seal

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "[M]otions to seal documents must be 'carefully and skeptically reviewed . . . to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

The Second Circuit has articulated a three-part test for determining whether the common law right of public access attaches. *Lugosch*, 435 F.3d at 119–20 (2d Cir. 2006). First, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Id*. at 119. Second, if the documents are judicial documents, a court must

determine the weight of the presumption of access. *Id*. Third, a court must balance "competing considerations" against the weight of the presumption of access. *Id.* at 120.

In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents. *Lugosch*, 435 F.3d at 120. Under the First Amendment "experience and logic" test, the court must consider whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Id*. (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)). If a First Amendment right of access applies, documents may only be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

**A. The Motions to Seal Are Granted in Part and Denied in Part**

The Court first notes that Petitioner's letter motion to seal (ECF No. 3), Declaration of Wendi Opper Uzar, Esq. (ECF No. 3-1), Declaration of Peter C. Hung (ECF No. 3-5) and Certificate of Service (ECF No. 3-6) are filed under seal, though neither party has moved to keep these documents sealed. Thus, Petitioner is directed to publicly file these documents **by April 30, 2024**.

The Court next turns to the documents that the parties seek to seal or redact. Petitioner seeks to seal the Agreement (ECF No. 3-2), First Amendment to the Agreement (ECF No. 3-3), and Second Amendment to the Agreement (ECF No. 3-4). *See* ECF No. 2; ECF No. 3. Respondent seeks to redact portions of their opposition to the motion for injunctive relief (ECF No. 18) and to redact in part and seal in part the July 14, 2023 letter (ECF No. 20-1). *See* ECF No. 17. "Documents and materials provided to aid in the adjudication of a motion for a

15

temporary restraining order or preliminary injunction are judicial documents entitled to the highest presumption of access." *Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Maritime Belge SA*, No. 24-CV-1445 (JGLC), 2024 WL 1097128, at *8 (S.D.N.Y. Mar. 13, 2024) (internal citation omitted). Accordingly, all the materials the parties seek to seal are judicial documents entitled to the highest presumption of access.

The Court must then balance "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120 (internal citation omitted). Established "competing considerations" include "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure" and of third parties. *Id.* (internal citation and quotation marks omitted); *see also Amodeo*, 71 F.3d at 1050–51. In addition, "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Amodeo*, 71 F.3d at 1051. Courts should also consider the "nature and degree of injury" that may result from disclosure, the "reliability of the information" and "whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.* "If such factors outweigh the value to the public of accessing the document at issue, then that document should be sealed." *Matter of Upper Brook Cos.*, No. 22-MC-97 (PKC), 2023 WL 172003, at *1 (S.D.N.Y. Jan. 12, 2023).

"[D]etailed financial information concerning a privately held business, not previously disclosed to the public, will in most cases warrant confidential treatment." *Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc.*, No. 15-CV-8681 (GBD) (BCM), 2016 WL 1364942, at

16

*4 (S.D.N.Y. Mar. 28, 2016). This is particularly true where revelation of "specific business information and strategies . . . may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Petitioner states that the Agreement contains business information, including royalty schedules and other pricing information; licensing terms; conditions and restrictions for the use of the licensed materials; and competitive information, including business strategies and objectives. ECF No. 3 at 2.

Applying the foregoing standards, the Court finds that the parties' interest in maintaining the confidentiality of portions of the Agreement outweighs the presumption of public access. However, as to the portions of the Agreement that directly bear on this matter – including the dispute resolution section and forum selection clause – the privacy interests do not outweigh the presumption of public access. Accordingly, as to the Agreement, the parties may not seal Part I, Section 2(a); Part I, Section 2(b), first paragraph; Part II, Section 32; Part II, Section 33; and the corresponding portions referred to in the opposition to the motion for injunctive relief. Petitioner is directed to file a version of the Agreement with appropriate redactions and Respondent is directed to file a version of the opposition without redactions. The amendments to the Agreement need not be refiled.

As to the July 14, 2023 letter, Respondent may not redact the letter, but may keep the 2024-2028 proposed business plan under seal. The portions of the letter that Respondent seeks to redact are relevant to the parties' dispute and, in large part, are summaries of portions of the Agreement that will be made public. However, the Court acknowledges that disclosure of the proposed business plan may provide competitors an unfair advantage, which outweighs the

17

presumption of public access. "Because the common law framework is dispositive of the motion[s] to seal, the Court need not undertake the First Amendment analysis." *In re Telegraph Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023).

## CONCLUSION

For the foregoing reasons, Petitioner's motion for a preliminary injunction is GRANTED. Respondent is directed to (1) withdraw the Mexico Injunction and/or any other related injunction granted by any Mexican court purporting to enjoin Petitioner from moving forward with the termination of the Agreement, including conducting all relevant and necessary filings before the Mexico City Court to vacate the Mexico Injunction and/or any related injunction, including ratifying such withdrawal if the Mexico City Court so requests it; and (2) refrain from enforcing the Mexico Injunction while it remains in effect.

Petitioner's motion to seal is GRANTED in part and DENIED in part, and Respondent's motion to seal is GRANTED in part and DENIED in part. The parties are directed to publicly file versions of ECF Nos. 3, 3-1, 3-2, 3-3, 3-4, 3-5, 3-6, 19, and 21-1 that conform to Section IV of this Order no later than **April 30, 2024**.

The Clerk of Court is directed to terminate ECF Nos. 2, 7, and 17.

Dated: April 23, 2024
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge